COMMONWEALTH *vs.* SAMUEL BRITT.
(and five companion cases [1]).

Suffolk.   May 1, 1972. — July 14, 1972.

Present: TAURO, C.J., REARDON, QUIRICO, BRAUCHER, &
HENNESSEY, JJ.

*Practice, Criminal,* Recording of proceedings, Probable cause hear-
ing.   *District Court,* Recording of proceedings, Probable cause
hearing.   *Constitutional Law,* Due process of law, Equal protec-
tion of laws.

A hearing in a District Court as to whether a crime has been com-
mitted and there is probable cause to believe the defendant guilty
of a felony is a "critical stage" of the criminal process in Massa-
chusetts. [330–331]
Inasmuch as the Commonwealth has not appropriated funds for
stenographers to record criminal proceedings before District Courts
and to have transcripts thereof available for a price, the Com-
monwealth was not required by the Fourteenth Amendment to the
United States Constitution to provide free typewritten transcripts
of proceedings to an indigent who was brought before a District
Court and charged with a felony. [329–331]   REARDON, J., dis-
senting.
In the absence of a valid reason for the denial of a motion by an
indigent defendant for permission to record electronically the
testimony of witnesses at a criminal proceeding at which no
stenographer is present, denial of the motion would ordinarily
constitute an abuse of discretion. [332]

COMPLAINT received and sworn to in the Municipal
Court of the City of Boston on April 26, 1971.

INDICTMENTS found and returned in the Superior Court
on September 15, 1971, and September 22, 1971.

Following a hearing on motions of the defendants to
dismiss the indictments, the cases were reported by
*Smith,* J.

*Wallace W. Sherwood* for the defendants.
*Alvan Brody* for the Commonwealth.

---

[1] One of the companion cases is against Samuel Britt and four are
against Joel Taylor.   One of the cases against Taylor was appealed
to the Superior Court from the Municipal Court of the City of Boston
after a finding of guilty, and the record does not show why that case
was included in the report.

*Richard K. Donahue & Lloyd L. Weinreb*, for the Massachusetts Bar Association, amicus curiae, submitted a brief.

. *L. Scott Harshbarger*, for Lawyers' Committee for . Civil Rights Under Law; *Melvyn H. Zarr*, for Massachusetts Law Reform Institute; *Reuben Goodman*, for Massachusetts Defenders Committee; *Matthew H. Feinberg*, for Civil Liberties Union of Massachusetts; and *Robert L. Spangenberg*, for Boston Legal Assistance Project, amici curiae, joined in a brief.

*John M. Mullen*, amicus curiae, submitted a memorandum.

*Edward T. Crossen & Louis M. Nordlinger*, Assistant District Attorneys, submitted a memorandum.

BRAUCHER, J. These cases are before us on an interlocutory report under the provisions of G. L. c. 278, § 30A, inserted by St. 1954, c. 528. There was a hearing below on the defendants' motions to dismiss the indictments. The judge reported the following two questions: "(a) Is the Commonwealth required by the Due Process and Equal Protection clauses of the Fourteenth Amendment to the United States Constitution, and, Articles XI and XII of the Declaration of Rights of the Constitution of Massachusetts to provide free typewritten transcript of the proceedings to an indigent who is brought before the district court charged with a felony, and, (b) if an indigent defendant has not been given such a transcript, may the Superior Court, upon the defendant's application to the Superior Court, order the district court to conduct a *de novo* hearing and provide a stenographer and a type-written transcript of the proceedings?"

For the purposes of this report, the parties have submitted two statements of agreed facts, which we summarize in relevant part.

Both defendants were arraigned in the Municipal Court of the Roxbury District on felony charges. Both were found to be indigent, and counsel from the Roxbury defenders committee was appointed for each. In Common-

wealth *vs.* Taylor, the defendant, at the inception of his probable cause hearing, moved for a transcript of the proceedings. The motion was denied. He then orally moved the Municipal Court "to proceed under Chapter 276, Sections 21 and 40 of M. G. L. A. and direct that the testimony of the witnesses be reduced to writing and signed." This motion was denied. The defendant at the same time moved for permission to record electronically the testimony of witnesses. This motion was also denied. The hearing proceeded and probable cause was found to hold the defendant for the grand jury.

In Commonwealth *vs.* Britt, the defendant, at the inception of his probable cause hearing, moved "to have the proceedings transcribed at the expense of the Commonwealth or Suffolk County." This motion was denied. The hearing proceeded and probable cause was found to hold the defendant for the grand jury.

The grand jury indicted the defendant Taylor on a charge of assault with intent to commit armed robbery and on two charges of armed robbery, and the defendant Britt on charges of larceny and rape. The motions to dismiss filed by both defendants are pending in the Superior Court.

1. The defendants and the amicus curiae briefs in arguing that the Commonwealth is constitutionally required to furnish a free transcript of a probable cause hearing to an indigent defendant upon his request, rely generally on the line of cases beginning with *Griffin* v. *Illinois*, 351 U. S. 12, 19 (where the Supreme Court stated that "[t]here can be no equal justice where the kind of trial a man gets depends on the amount of money he has"), and particularly on the case of *Roberts* v. *LaVallee*, 389 U. S. 40. In the *Roberts* case, a New York defendant was charged with robbery, larceny, and assault. At trial, his request for a free transcript of a prior preliminary hearing was denied. A New York statute (N. Y. Code Crim. Proc. § 206) provided that the State would furnish a transcript of the hearing on payment of a certain fee. The Supreme Court held that the

statute denied indigent defendants the equal protection of the laws.[2]

The *Roberts* case has produced varied interpretations. In *Gardner* v. *United States*, 407 F. 2d 1266, 1268 (D. C. Cir.), it was said, "[I]n view of the constitutional status accorded an indigent's right to a transcript by *Roberts* v. *LaVallee* . . . it now appears essential that *every* preliminary hearing be transcribed, whether by court reporter or by tape recording, regardless of whether any request for transcription is made." By contrast, in *People* v. *Hubbard*, 107 Ill. App. 2d 79 (1969), the Illinois Court held the *Roberts* case inapplicable to an indigent defendant's claim to a free transcript of a preliminary hearing because there "is no such statute in Illinois which provides for the furnishing of a preliminary hearing transcript for a fee or otherwise." Accord, *People* v. *Patterson*, 131 Ill. App. 2d 342, 347; *People* v. *Williams*, 131 Ill. App. 2d 280, 285. The same view was taken by the Alabama Supreme Court in *Williams* v. *Jasper*, 287 Ala. 237, 238, 239, where the court noted that the Alabama Legislature had in 1969 repealed a statutory requirement that transcripts of preliminary hearings be made. See *United States ex rel. Cadogan* v. *LaVallee*, 428 F. 2d 165 (2d Cir.) ; *Sharbor* v. *Gathright*, 295 F. Supp. 386, 388 (W. D. Va.).

Like Alabama and Illinois, this Commonwealth has no statute requiring the recording of testimony in the District Courts and furnishing of transcripts for a fee or otherwise. But G. L. c. 221, § 91B, inserted by St. 1965, c. 585, does permit a defendant to hire a stenographer and record the proceedings "at his own expense" when a court appointed stenographer is not present. *Commonwealth* v. *Shea*, 356 Mass. 358, 360–361. If we were to hold that that statute denies to the indigent the equal protection of the laws, we should then have to consider

---

[2] Prior to the Supreme Court decision, the New York Court of Appeals had struck down this statute, stating, "When the State constitutionally or statutorily affords a defendant a right, the exercise thereof cannot be conditioned upon the defendant's ability to pay." *People* v. *Montgomery*, 18 N. Y. 2d 993, 994 (1966).

whether the legislative intention would be to save part of the statute or to deprive it of all effect. Compare *Dalli* v. *Board of Educ.* 358 Mass. 753, 759. In none of the present cases, however, does the record show that the defendant had a stenographer present in the court room, like the defendant in the *Shea* case, or that his indigence prevented him from securing the presence of a stenographer. The poor are not entitled to better protection of the laws than the rich. Hence no question is presented as to denial of equal protection of the laws by reason of the statute.

2. The contentions made in these cases raise issues with potential impact not limited to probable cause hearings but affecting almost all criminal proceedings in the District Courts. We all agree that stenographers and transcripts are highly desirable at all criminal trials and proceedings in all courts. Unfortunately, however, stenographers cost money, and the Legislature has not appropriated funds for stenographers in the District Courts. "The district courts . . . are only authorized to employ stenographers in trials by juries of six, and although parties may retain stenographers at their own expense, they are not commonly used. . . . An attempt to remedy this obvious deficiency is long overdue." Interim Report of the Joint Special Committee Established to Investigate and Study Reform of the Judicial System, 1972 House Doc. No. 5685, at 23.

Moreover, "stenographers are not available in sufficient numbers at the present time, to staff the 72 district courts and the Boston Municipal Court." *Id.* at 23–24. As the Solicitor General recently informed the Supreme Court of the United States, "Court reporters . . . are one of our worst bottlenecks." *Argersinger* v. *Hamlin*, 407 U. S. 25, 55 (concurring opinion of Powell, J.). The Joint Special Committee therefore suggested that "electronic recording devices would seem to offer the most practical alternative." Interim Report, *supra*, at 24.

One of the important functions of the District Courts is in our "two-tier system for adjudicating less serious

criminal cases." *Colten* v. *Kentucky*, 407 U. S. 104, 112–113. Compare *Mann* v. *Commonwealth*, 359 Mass. 661. In the *Colten* case, the Supreme Court pointed out that we, like some other States, "do not provide for trial by jury" and "do not record proceedings" in the lower tier of trial courts. "Two justifications are asserted for such tribunals: first, in this day of increasing burdens on state judiciaries, these courts are designed, in the interest of both the defendant and the State, to provide speedier and less costly adjudications than may be possible in the criminal courts of general jurisdiction where the full range of constitutional guarantees is available; second, if the defendant is not satisfied with the results of his first trial he has the unconditional right to a new trial in a superior court, unprejudiced by the proceedings or the outcome in the inferior courts."

The present cases do not involve the "two-tier system" but probable cause hearings in felony cases of which the District Courts do not have final jurisdiction. The district attorney may or may not participate in such hearings; in many cases the Commonwealth is represented by a police officer who is not an attorney. A decision that there is probable cause does not assure further prosecution; a decision that there is no probable cause does not preclude further prosecution. *Commonwealth* v. *Mahoney*, 331 Mass. 510, 511–512. *Burhoe* v. *Byrne*, 289 F. Supp. 408, 410–411 (D. Mass.). See *Arsenault* v. *Commonwealth*, 353 Mass. 575, 582, reversed sub nom. *Arsenault* v. *Massachusetts*, 393 U. S. 5. In most circumstances the defendant has no right to a probable cause hearing; the prosecutor may seek an indictment without such a hearing even after the defendant has been arrested. Compare *Commonwealth* v. *Nason*, 252 Mass. 545, 548. Traditionally, irregularities in the probable cause hearing furnished no ground for dismissal of the indictment. *Commonwealth* v. *Tinkham*, 14 Gray 12, 13–14. *Commonwealth* v. *Harvey*, 111 Mass. 420, 421.

Nevertheless, the probable cause hearing is a "critical stage" of the criminal process, partly because of the in-

cidental opportunity for discovery of the Commonwealth's case and for preparation to impeach the Commonwealth's witnesses if their testimony at trial is inconsistent with their testimony at the preliminary hearing. *Coleman* v. *Alabama*, 399 U. S. 1, 9–10. Compare *Arsenault* v. *Commonwealth*, 353 Mass. 575, 578, 582, reversed sub nom. *Arsenault* v. *Massachusetts*, 393 U. S. 5. A reliable record of what is discovered is of course an important aspect of that opportunity. Compare *Commonwealth* v. *A Juvenile*, 361 Mass. 214, 218–219. If a court appointed stenographer had made such a record there would be no question that it should now be made available to an indigent defendant without cost. *Roberts* v. *LaVallee*, 389 U. S. 40. Compare *Commonwealth* v. *Possehl*, 355 Mass. 575, 577; *Commonwealth* v. *King*, 356 Mass. 495, 498–499. But we think there is a valid distinction between the situation where a State records the proceedings in the first instance and makes the transcripts available to the defendants who can afford them, and the situation where the State merely allows a defendant to record the proceedings for himself. Once a State has appropriated funds to pay stenographers, has committed itself to record the proceedings, and has made transcripts available for a price, there is an obvious denial of equal protection if distribution of transcripts is restricted to defendants with sufficient means. But where no such commitment has been made, all defendants are treated alike and there is no denial of equal protection. We do not understand the Supreme Court to have said that every preliminary hearing must be transcribed. If we were to hold that these defendants are entitled to stenographic transcripts, we could not, in view of the existing shortage of trained court reporters, assure equal treatment to all those similarly situated. We think the principle is applicable that "the Fourteenth Amendment does not require a State to furnish an indigent with every luxury that a wealthy litigant might conceivably choose to purchase." *Gardner* v. *California*, 393 U. S. 367, 372 (dissenting opinion of Harlan, J.).

3. In the Roxbury Municipal Court the defendant Taylor moved for permission to record electronically the testimony of the witnesses. This motion was denied. Both the defendants and the Commonwealth seem to suggest that electronic recording devices may provide a viable alternative to stenographic recording. See *Gardner* v. *United States*, 407 F. 2d 1266, 1268 (D. C. Cir.). The Joint Special Committee in the report quoted above made a similar suggestion. Allowance of such a motion seems clearly to be within the power of the judge. Compare Rule 46 of the Rules of the District Courts as adopted in 1965. We think denial of such a motion, made by an indigent defendant at a proceeding at which no stenographer is present, is ordinarily an abuse of discretion unless some valid reason is given. No question with respect to electronic recording has been reported to us, and at least at this point we cannot tell whether there is any possibility of resulting prejudice. We therefore do not pursue further the question whether the availability of this alternative would affect a claim that denial of funds to pay a stenographer is a denial of equal protection of the laws. See *Mayer* v. *Chicago*, 404 U. S. 189, 194–195; *Britt* v. *North Carolina*, 404 U.S. 226, 227, 229; *Commonwealth* v. *DeSimone*, 447 Pa. 380, 382–383. We note that District Court Rule 46 was amended, effective June 1, 1972, to encourage electronic recording.

4. We answer both of the questions reported to us "No," and remand the cases to the Superior Court for trial.

*So ordered.*

REARDON, J. (dissenting) There is no escape from the practical difficulty of providing stenographers and free transcripts for indigents "at all criminal trials and proceedings in all courts" as emphasized by the majority. However, the majority opinion seems to me a misreading of *Roberts* v. *LaVallee*, 389 U. S. 40. One cannot dis-

miss its effect on the ground of cost or unavailability of stenographers. As Mr. Justice Powell has recently stated, "[I]f the Constitution requires the rule . . . the consequences are immaterial." *Argersinger* v. *Hamlin*, 407 U. S. 25.

In the *Roberts* case a New York defendant charged with robbery, larceny, and assault was denied at trial his request for a free transcript of a prior preliminary hearing. The majority opinion refers to the New York statute under which a transcript made by the State could be procured upon payment of a fee. The *Roberts* case holds that the statute constituted a denial to an indigent defendant of the equal protection of the laws. The majority opinion likewise refers to *People* v. *Montgomery*, 18 N. Y. 2d 993, which emphasized that the exercise of a right afforded to a defendant by the State cannot be conditioned upon his ability to pay. That is precisely the situation before us. Under the New York statute the State transcribed the proceedings and furnished the transcript to the defendants for a fee. Under our statute (G. L. c. 221, § 91B, inserted by St. 1965, c. 585), a defendant "may have the proceedings taken by a stenographer provided at his own expense." [1] Under both statutes the end result is the same. Under both statutes a defendant may be deprived of a needed transcript simply because of his indigency status. Since the Commonwealth has seen fit to grant an important right to defendants in criminal cases, it cannot interpose a financial obstacle to the exercise of that right.

It is possible, however, as the majority opinion suggests, that electronic recording devices may be a viable alternative to stenographic recording. See Reynolds, Alaska's Ten Years of Electronic Reporting, 56 Am. Bar Assn. J. 1080. Compare Boyko, The Case Against Elec-

---

[1] It is a fair inference that each defendant's indigence prevented him from securing the presence of a stenographer in the court room. I have no doubt that the equal protection question is properly before us.

tronic Courtroom Reporting, 57 Am. Bar Assn. J. 1008. This would obviate the practical difficulties foreseen by the majority. Under *Britt* v. *North Carolina*, 404 U. S. 226, a defendant need not be provided with a stenographic transcript of a prior proceeding if an adequate alternative exists. But the Commonwealth has the burden of proof on this issue. *Britt* v. *North Carolina*, *supra*, 230. Until the Commonwealth can sustain this burden I would hold that the indigent who is brought before a District Court charged with a felony is entitled under the equal protection clause of the Federal Constitution to a free transcript of the proceedings. I would answer both questions reported to us "Yes."