267 So.2d 509

**Paul MOORE, Jr.**

v.

**STATE.**

**1 Div. 264.**

Court of Criminal Appeals of Alabama.

Oct. 10, 1972.

**720**

David L. Barnett, Mobile, for appellant.

William J. Baxley, Atty. Gen., and Joseph G. L. Marston, III, Asst. Atty. Gen., for the State.

PER CURIAM.

This is an appeal from a conviction of robbery with punishment fixed at twelve years imprisonment.

At the conclusion of the testimony offered by the State the appellant moved that it be excluded and he be discharged for the failure of the State to present a prima facie case of robbery. This motion was overruled by the court. In considering the ruling of the court on the motion to exclude, it is appropriate that we set out a brief outline of the State's testimony.

The statement of facts in appellant's brief is substantially correct and, with minor additions, is adopted by the court. It reads as follows:

"In the case at bar Henry Campbell testified that two colored males and one white male came into the Continental Trailways Bus Station on March 22, 1971, about 10:15 p. m. One had a blue and white sweater over his head [and we interpolate, he had a gun] and they robbed him. He could not identify any of them but stated that they took cash, some ticket stubs, and some petty cash tickets. He also stated that the loss from the robbery was $178.00. Next Clyde A. Dumas testified that he was patrolling on the night of March 22, 1971, with Officer George Sullivan when they received a police radio call involving a hold-up at the Trailways Bus Station approximately eight blocks from their position. They closed in on Joachim Street and Officer Sullivan pulled off and chased three subjects who were running along the street. One of the subjects was known to him as Paul Moore, Jr., the Defendant, and he stated that the Defendant dropped a black hat about six or eight feet from where he was and that said hat contained money and ticket stubs, and that since he matched the description of one of the subjects described over the police radio broadcast he was arrested at that time. Through Officer Dumas the hat and

ticket stubs were introduced into evidence along with some money. Then Officer Dumas's partner, George Sullivan, testified substantially to the same facts and stated that he observed a colored male in a blue and white striped shirt along with two other males when they were stopped, and that the Defendant dropped a black hat to his side and at that time made a spontaneous declaration that he had nothing to do with taking the money, but had just met up with the subjects after they started running. He also identified the hat and the contents and stated that they were visible when he walked up to the scene and the money was inside the hat along with some ticket stubs. Officer Sullivan went along with Officer Dumas, and took the subjects down to C. I. D. and turned the evidence over to Sargeant Wilson. Testimony was then elicited from Detective Sargeant Henry Lee Wilson stating that the petty cash voucher and the money in the hat had been given to him by the other two officers and that he placed it into the vault and it had been in his custody until trial."

The defendant did not testify nor offer any testimony in his defense.

 Robbery is defined as "the felonious taking of money, or goods of value, from the person of another, or in his presence, by violence to his person, or by putting him into fear." Douglass v. State, 21 Ala.App. 289, 107 So. 791.

 The offense, of course, may be proved by circumstantial evidence as well as direct evidence. We think the State made out a prima facie case which was properly submitted for the jury's consideration. Therefore, no error appears in the action of the court's overruling the motion to exclude the evidence.

In the argument to the jury by the district attorney the following occurred:

"MR. GRADDICK: He's going to ask you to let the man go because that's his job. He's a Public Defender.

"MR. LAWLER: I object to that, Your Honor. That's highly inflamatory and prejudicial—that 'That's my job because I'm a Public Defender.' I may be the Public Defender, but I represent this man and I have every right to step forward and speak for him. There should be no dispersion cast on my role in the trial of this man's case to make it appear that I'm just up here in some pro forma role. I'm here because I want to be and I'm here to protect this man's rights, and he has no right to comment on that.

"THE COURT: I would sustain the objection. Ladies and Gentlemen of the Jury, disregard the man's statement. Go ahead, Mr. Graddick.

. . . . . .

"MR. GRADDICK: Every criminal commits one mistake, and that's why they end up right here. They always make one mistake, because if they didn't make a mistake, they wouldn't be sitting in the chair next to Mr. Lawler. He wouldn't have been indicted.

"MR. LAWLER: Wait, now I'm going to object to that. The indictment carries nothing. Just like I said over and over, and I think Mr. Graddick said it first, but I think he is inferring now that everybody that is indicted is automatically guilty.

"MR. GRADDICK: It's strange, Judge, how Mr. Lawler reads my mind.

"THE COURT: I'll sustain the objection, go ahead."

The appellant contends that the prejudicial effect on his case of the argument could not be eradicated and that under the rule in Blue v. State, 246 Ala. 73, 19 So.2d 11, and other cases cited, a new trial should have been granted the appellant. We consider Blue, supra, more closely supportive of his argument than numerous other cases since the court in Blue ruled in most instances with the defendant on objections to the argument by the district attorney to the jury and gave the jury

strong instructions not to consider the argument. The holding was in substance that the cumulative effect of the improper argument of the district attorney was so prejudicial to the defendant's case as to be ineradicable by the instructions of the court. It will be noted, however, that this question was raised by a motion for a new trial in *Blue*.

An accurate statement of the test of whether the effect of argument is eradicable or ineradicable is found in Birmingham Railway, Light and Power Co. v. Gonzalez, 183 Ala. 273, 61 So. 80, which is:

" . . . Each case of this character must be decided upon its own merits. There is no horizontal rule by which these qualities can be ascertained in all cases. Much will depend upon the issues, the parties, and the general atmosphere of the particular case. The final test is: Can the prejudicial tendency or effect of the improper statement be counteracted by an appropriate instruction from the trial judge, or is it probably beyond the reach of such remedial action?"

For a careful review of the authorities dealing with this question, we have reached the conclusion that the argument in the case at bar was improper but of such character as to be eradicable by the action taken by the court.

Aside from this conclusion it appears that the rulings of the court were all favorable to the appellant and that he received all he requested from the court. He made no motion for a mistrial nor a motion to set aside the verdict.

We quote from a paper read by the Honorable Louis Lusk of Guntersville, Alabama, before a Circuit Judges Seminar in 1963, with which we agree:

"If an improper argument is of such a character that its prejudicial influence is ineradicable by any action of the trial court, a motion for a mistrial or a motion for a new trial should be granted. Colquett v. Williams, 264 Ala. 214, 86 So.2d 381; Sinclair v. Taylor, 233 Ala. 304, 171 So. 728; Pryor v. Limestone County, 225 Ala. 540, 144 So. 18. The question may be presented for the first time by motion for new trial; it is not necessary in such case for the complaining party to object or move to exclude or even move for a mistrial—he may gamble on a favorable verdict, and if he loses, may then move for a new trial. Pearson v. Birmingham Transit Co., 264 Ala. 350, 87 So.2d 857; McLemore v. International Union, 264 Ala. 538, 88 So.2d 170; Anderson v. State, 209 Ala. 36, 95 So. 171.

"Notwithstanding the ineradicable nature of the argument, the trial court is under no duty to declare a mistrial or grant a new trial ex mero motu, and unless the complaining party obtains some adverse ruling in connection with the argument, either during trial or on motion for new trial, the propriety of such argument will not be reviewed on appeal. Clark v. Hudson, 265 Ala. 630, 93 So.2d 138; Washington v. State, 259 Ala. 104, 65 So.2d 704."

We have responded to the main argument in appellant's brief. In addition, we have searched the record for error and none appearing of a reversible nature, this cause is due to be and is affirmed.

The foregoing opinion was prepared by W. J. HARALSON, Supernumerary Circuit Judge, and adopted by this Court as its opinion.

Affirmed.

All the Judges concur.